IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER COPELIN             :

                                :

v.                              Civil Action WMN-00-2787

                                :

BALTIMORE INTERNATIONAL
    COLLEGE, INC.               :

**MEMORANDUM**

Before the Court is Defendant's Motion for Summary Judgment. Paper No. 10.[1] The motion is fully briefed. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted.

**I.   FACTUAL BACKGROUND**

Baltimore International College, Inc. is an accredited college offering training in the hospitality industry. Defendant Baltimore International College Foundation, Inc. is a not-for-profit organization that owns various hotel properties that it operates for the purpose of providing training facilities for

---

[1] Also pending is Plaintiff's motion for leave to amend the complaint. Paper No. 14. The sole purpose of the amendment is to change the name of the Defendant from "Baltimore International College, Inc." to "Baltimore International College Foundation, Inc.," which Plaintiff now understands is the true name of his employer. While Defendant opposes the motion on the grounds of undue delay, the Court notes that Plaintiff's misnomer does not appear to have affected the litigation in any way. Discovery progressed as though Plaintiff had named the proper defendant, and more significantly, the motion for summary judgment raises all of the arguments that would have been raised by the Foundation. Plaintiff's motion to amend will be granted.

students of the college.  This action arises out of Defendant's dismissal of Plaintiff from his position as the director of housekeeping at one of the hotels owned by the Foundation, the Mt. Vernon Hotel.

Plaintiff began his position with Defendant in October 1997. At the time he was hired, his supervisor was Allison Stine, who was the area general manager for the Foundation.  Jerry Littlefield, the individual who ultimately terminated Plaintiff, was hired by the Defendant on July 6, 1999, as the general manager of the Mt. Vernon Hotel.  On August 12, 1999, Stine gave notice that she was resigning from her position as of August 26, 1999, to become the manager of a hotel property in Ocean City, Maryland.  While there is some dispute as to whether Stine or Littlefield functioned as Plaintiff's supervisor prior to August 26, 1999, there is no dispute that, after that date, Littlefield was Plaintiff's supervisor.

According to the complaint and Plaintiff's deposition testimony, Plaintiff initiated a meeting with Littlefield on September 1, 1999, for the purpose of reporting claims of sexual harassment that had been raised by several women on the housekeeping staff against Littlefield.  These women complained that Littlefield would come into the rooms that they were cleaning and stare at them without announcing his presence.  This made the women uncomfortable and they came to Plaintiff with

their concerns, which he then brought to Littlefield. Less than one week later, on September 6, 1999, Littlefield told Plaintiff that he was terminating him as director of housekeeping. Plaintiff alleges that Littlefield fired him in retaliation for Plaintiff's raising of the issue of sexual harassment and asserts a claim of retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). In the alternative, Plaintiff, who is black, alleges that Littlefield fired him on account of his race, also in violation of Title VII. Defendant has moved for summary judgment as to both claims.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue of material fact and [where] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). While the non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor," Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987), the non-movant, in resisting summary judgment, must "go beyond the pleadings and by [its] own affidavits . . . depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Summary judgment is appropriate, therefore, where there is no genuine issue of material fact that could lead a rational trier of fact to find

for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**III. DISCUSSION**

    A.  **Retaliation Claim**

In the absence of direct evidence of retaliation, retaliation claims proceed under the now familiar burden shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).  The plaintiff must first make out a prima facie case of retaliation and then the burden shifts to the defendant to show a legitimate non-retaliatory reason for its action.  The burden then shifts back to the plaintiff to show that his employer's proffered explanation was pretextual.  Id. To make out the prima facie case of retaliation, the plaintiff must demonstrate that: 1) he engaged in protected activity; 2) he suffered an adverse employment action; and 3) a causal connection exists between the two.  Beall v. Abbott Laboratories, 130 F.3d 614, 619 (4th Cir, 1997).

While the current record leaves it open to some dispute as to whether Plaintiff's mention of the housekeepers' concerns rises to the level of protected conduct,[2] the Court will assume

---

    [2] Littlefield describes the September 1, 1999 meeting very differently than Plaintiff.  According to Littlefield, they met on a different topic on September 1 and Plaintiff casually mentioned, as he was leaving that meeting, that several housekeepers had complained that Littlefield was "staring at their butts."

4

that it does for the purpose of this motion. It is undisputed that Plaintiff suffered an adverse employment action - he was fired. To establish a causal connection between the two, Plaintiff relies exclusively on the temporal proximity of the September 1 "confrontation," and his termination on September 6.

Ordinarily, such a temporal connection between two such events would be sufficient to establish a prima facie case. See, Jaudon v. Elder Health, Inc., 125 F.Supp.2d 153, 165 (D. Md. 2000). Here, however, Defendant has offered substantial evidence that Littlefield made the decision to fire Plaintiff well before the incident of September 1, and the Court finds that Plaintiff has been unable to offer evidence upon which a reasonable jury could conclude otherwise.

In his deposition, Littlefield testified that he was dissatisfied with the level of cleanliness of the Mt. Vernon Hotel from the time he first took over the position at the hotel. In mid-August, he spoke with some individuals with whom he had worked previously about coming to work as director of housekeeping at the Mt. Vernon. At some point during this time frame, he states that he offered Plaintiff's position to Carol Oliver, and she accepted the offer. Littlefield Dep. at 99-101. Because Oliver was currently employed and needed to give her

---

Littlefield Dep. at 121.

5

employer reasonable notice, it was agreed that she would not begin work until September 7. In her affidavit, submitted with the motion for summary judgment, Oliver confirms that she was offered the position in the middle of August but did not begin work until September because of her commitment to her previous employer. Oliver Aff. at ¶ 3.

Plaintiff's response to this evidence is to suggest that "a reasonable jury . . . could disbelieve Mr. Littlefield and Ms. Oliver (who is still employed at the hotel) and conclude that their account of events is fictitious and false." Opp. at 13. To bolster his attack on the credibility of Littlefield and Oliver, Plaintiff points the Court to some minor and/or apparent inconsistencies in Defendant's evidence.

First, Plaintiff points to a "Job Application" that was filled out by Oliver and dated September 22, 1999. Plaintiff's Exh. 16. Plaintiff cites this as evidence that Littlefield could not have hired her in mid-August as he claims if she did not apply for the job until September 22. Defendant explains that this application was filled out for the sole purpose of completing her personnel file prior to the issuance of her first pay check. Defendant offers that this application was merely a formality, since no one actually "applied" for the position because Littlefield filled it with someone with whom he was already well familiar. Supporting Littlefield's version of

6

events is an internal "Employee Action Form" in which Littlefield requests that Oliver "Replace [the] Current Director" with a start date of "9/7/99." Def. Exh. 10. This request is dated "8/30/99." While making much of the September 22, 1999 Application, Plaintiff completely ignores the August 30, 1999 Employee Action Form, which was submitted by Defendant with its motion for summary judgment.

Plaintiff admits, in fact, that when he was fired on September 6, he was told that his replacement would start the next day. Except for his reference to the September 22, 1999 application, Plaintiff offers nothing to indicate that Oliver did not, in fact, start on September 7.

Next, Plaintiff opines that because Stine remained Plaintiff's supervisor until her last day of work on August 26, 1999, Littlefield would not have been able to either make the decision to fire Plaintiff or the decision to hire Oliver without her agreement or, at least, her knowledge. Stine has submitted an affidavit in which she states that she was unaware of any plan to replace Plaintiff, and furthermore, that she, personally, was very satisfied with his work. Stine's opinion of Plaintiff's qualifications is further evinced in her formal job reviews of his performance, Pl's Exhs. 22, 23, her offer to employ him at the new hotel to which she moved, Pl's Exh. 21, and a positive reference she provided for him when he applied for a position at

7

a different hotel.  <u>See</u> Stine Dep. at 63-64.

Evidence of Stine's lack of awareness of, or disagreement with, Littlefield's actions does not undermine the credibility of Littlefield's or Oliver's testimony.  At the time that Littlefield was making these decisions, Stine had already given her notice.  There is no reason for a jury to conclude that Littlefield would have conferred with someone who was essentially a "lame duck" at that time.  It is just as reasonable that he would not have conferred with Stine.

The remainder of Plaintiff's arguments challenging the credibility of Littlefield's and Oliver's claim that the decision to hire Oliver was made in mid-August relate to minor discrepancies in the details put forward by Defendant and Littlefield in this litigation.  For example, Plaintiff makes much of the fact that in Defendant's Answer to the Complaint, Defendant admitted that "[s]hortly after firing plaintiff, Mr. Littlefield hired a white person to be director of housekeeping at the Hotel."  <u>See</u> Answer at ¶ 32, answering Complaint at ¶ 32.  There is certainly some ambiguity, however, as to whether "hired" in this context refers to when Littlefield made the decision to employ Oliver, or when Oliver actually began work.  Furthermore, an answer is not admissible "evidence" that can be used to defeat a motion for summary judgment.

Plaintiff also points to discrepancies among statements

provided by Defendant and Littlefield during the course of this litigation as to the precise date that Littlefield decided to fire Plaintiff.  Relying on the August 30, 1999 Employee Action Form, Defendant answered Plaintiff's initial set of interrogatories by stating that Oliver was offered the position "approximately 10 days before" she began working on September 7. Def's Answer to Inter. at 12, Pl's Exh. 18.  In his deposition, however, Littlefield stated that he believed it was earlier, between August 16 and 20, that he made the offer.  Littlefield Dep. at 101.  After Littlefield's deposition, Defendant filed an amended answer to interrogatories indicating that Oliver was offered the position "approximately two to three weeks earlier - on or about August 16, 1999."  Def's Amended Answer to Inter. at 14, Pl's Exh. 2.

The Court notes that contrary to Plaintiff's claim, Littlefield did not change his story as to when he decided to hire Oliver and fire Plaintiff.  All along he has asserted it was in mid-August.  While Defendant did make a minor correction to its statement, based upon information it acquired in the course of discovery, that change is not material.  At all times, Defendant and Littlefield have asserted that the decision was made prior to the date on which Plaintiff claims he came to Littlefield with the report regarding sexual harassment.

Undeniably, there are these as well as other minor

differences in the details given by Defendant and Littlefield. That is not unexpected when parties are recounting events that occurred several years ago. None of these differences are material, however, nor do they serve to undermine the testimony of Littlefield and Oliver such that a reasonable jury could simply ignore their assertions that the decision to replace Plaintiff with Oliver was made prior to the confrontation of September 1. This is particularly true in light of the August 30, 1999 Employment Action Form, to which Plaintiff has offered no response, whatsoever.

Because the Court finds that a reasonable jury must conclude that the decision to fire Plaintiff was made prior to Plaintiff's September 1 confrontation with Littlefield, Plaintiff cannot establish that this confrontation was the cause of his dismissal. See <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268 (2001)(stating that employer need not suspend previously planned employment actions upon discovering that employee engaged in protected activity, and the employer's "proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatsoever of causality"); <u>Beinlich v. Curry Development, Inc.</u>, Case No. 94-1465, 1995 WL 311577 (4th Cir. May 22, 1995)(where decision to terminate employee was made prior to that employee's engagement in protected activity, no causation can be inferred from temporal connection). Accordingly,

10

Defendant is entitled to summary judgment as to Plaintiff's retaliation claim.

B. **Racial Discrimination Claim**

Plaintiff's racial discrimination claims is subject to a similar burden shifting scheme as his retaliation claim. In this instance, the prima facie case is demonstrated upon a showing that: 1) Plaintiff belongs to a protected class; 2) Plaintiff was qualified for the position; 3) Plaintiff was fired from the position; and 4) Plaintiff was replaced by someone outside the protected class. Causey v. Balog, 162 F.3d 795, 803 (4th Cir 1998).

At first blush, it would appear that Plaintiff could establish a prima facie case: 1) Plaintiff is black; 2) evidence from his former supervisor tends to establish that he was qualified for the position; 3) Plaintiff was fired; and 4) he was replaced by a white individual. In moving for summary judgment, however, Defendant proffers the testimony of Littlefield that, prior to offering the position to Oliver, he offered the position to another individual with whom he had worked previously, Delilah Vick, who decided to turn down the position. Ms. Vick is black. Littlefield Dep. at 94-96, 101.

Plaintiff does not dispute that Littlefield first offered his position to another black individual. This fact completely undermines any inference of discrimination that might arise from

11

the hiring of Oliver.  Furthermore, Plaintiff has acknowledged that the sole basis of his discrimination claim was the hiring of a white woman into his former position.  Pl's Dep. at 49.  In the absence, therefore, of any probative evidence of racial discrimination, the Court must grant summary judgment to Defendant on this claim as well.

A separate order consistent with this memorandum will issue.

                                          /s/ William M. Nickerson
                                          William M. Nickerson
                                          United States District Judge

Dated: January 16, 2002